Matter of Kayatt (2018 NY Slip Op 00816)





Matter of Kayatt


2018 NY Slip Op 00816


Decided on February 6, 2018


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 6, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr., Justice Presiding,
Dianne T. Renwick
Richard T. Andrias
Barbara R. Kapnick
Ellen Gesmer, Justices.


M-2883

[*1]In the Matter of Arlene S. Kayatt, (admitted as Arlene Socol Kayatt), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Arlene S. Kayatt, (OCA Atty. Reg. No. 2146330) Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Arlene S. Kayatt, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on July 6, 1987.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Elisabeth A. Palladino, of counsel), for petitioner.
Paul T. Gentile, P.C. (Stephen J. Riegel, of counsel) for respondent.



PER CURIAM


Respondent Arlene S. Kayatt was admitted to the practice of law in the State of New York by the First Judicial Department on July 6, 1987, under the name Arlene Socol Kayatt. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.
In 2015, the Attorney Grievance Committee (AGC) brought seven charges against respondent alleging violations of New York Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15(b)(1)(failure to maintain separate accounts for client/third-party funds and [*2]attorney's personal/business funds); rule 1.15(d)(1)(i),(ii), and (viii) (failure to keep required bookkeeping records); rule 8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation); rule 8.4(d)(conduct prejudicial to the administration of justice); and rule 8.4(h)(other conduct adversely reflecting on fitness as a lawyer).
The charges stemmed from, inter alia, respondent's misuse of two escrow accounts as business/personal accounts which she allegedly used to shield personal funds from tax authorities.
In March 2016, a hearing was held before a Referee, who sustained only charge one (rule 1.15[b][1]) and charge seven in part (rule 8.4[h] - insofar as it pertained to charge one) and recommended respondent be suspended for four months.
A Hearing Panel heard oral argument and in a report, the Panel affirmed the Referee's liability findings except it recommended that charge two (rule 1.15[d][1] - failure to keep required bookkeeping records) and charge seven (rule 8.4[h] insofar as it pertained to charge two) also be sustained. In addition, the Panel modified the Referee's sanction recommendation of a four-month suspension and, instead, recommended a two-month suspension.
Respondent, who is 74-years-old, began her legal career in 1987 following careers in teaching and journalism. In or about 1989 respondent opened a solo practice focused primarily on matrimonial matters, at which time she went a bank to open a business account and an escrow account. However, the account the bank set up for her was solely an escrow account which was structured such that there was a master account and sub-accounts for each individual client matter. Client/third-party funds were deposited into sub-accounts each with its own account number. Respondent would then have to transfer funds from the individual sub-accounts to the master account in order to disburse them. Respondent did not open an operating account and improperly left her earned legal fees on deposit in the master escrow account which she used as her operating/personal account for about 22 years. In or about the mid-1990's respondent opened another escrow account which she structured and used in the same manner as her initial escrow account.
In August 2010, respondent closed her second escrow account and opened a third escrow account which she structured and used in the same manner as her prior two escrow accounts. Due to a bank error in moving funds from the closed escrow account to the new one, two checks bounced which resulted in notification to the AGC. The ensuing investigation revealed respondent's improper use of her escrow account as a dual depository for client/third-party funds and her business/personal funds.
Respondent testified that she set up and used her escrow accounts in the manner in which she was instructed by the bank in 1989 when she opened her first account, which the Referee noted she appeared never to have questioned thereafter. She only learned of the impropriety of her conduct after the AGC commenced its investigation. After the investigation began, respondent discontinued using her escrow account as her business account and opened a separate operating account at another bank.
The AGC charged respondent with misusing her escrow accounts to shield personal funds from tax authorities. In 2007, the IRS audited respondent's tax returns for the 2005 and 2006 tax years and disallowed most of her claimed business expenses. The audit resulted in an additional tax liability of approximately $87,000 which grew significantly with interest and penalties. At the time of the audit respondent was being treated for stage two breast cancer and stated that her illness interfered with her ability to collect and produce relevant documents. She also testified that she was poorly represented by her accountant. Respondent has unsuccessfully sought reconsideration of the IRS audit. The exact amount of respondent's tax debt is unclear but she appears to owe the IRS and New York State somewhere between $50,000 and $100,000. In or about 2009, the IRS levied against respondent's monthly Social Security payments (currently 55% of her monthly Social Security payments are garnished by the IRS). As of October 2009, respondent's federal tax debt was over $102,000 and is still in the tens of thousands of dollars.
Also since 2009, because of the IRS levy against her monthly Social Security payments, respondent has deliberately kept the balance of personal funds she improperly maintained in her [*3]escrow accounts low. After she deposited her legal fees or other personal funds into the escrow accounts, she would pay business/personal expenses and immediately withdraw most of her funds and hold them in cash because she feared that the IRS would levy against her escrow account, leaving her without funds to live on. Respondent would then use the cash to pay bills, re-deposit it when necessary, or use bank cashier checks.
In addition, the AGC charged respondent with misuse of a third party's personal bank accounts to shield her funds from tax authorities. In November 2012, respondent broke her ankle and suffered other serious injuries requiring a lengthy recuperation. In December 2012, she returned home from a rehabilitation facility but was physically and mentally unable to work or handle her financial affairs. Respondent's close friend and sometime paralegal S.G. testified that, on her own initiative, she laid out $50,000 of her own money as a loan to pay for respondent's rent and other bills. When respondent's mental state improved, S.G. told her what she had been doing and continued to help. Thus, respondent would endorse checks she received from clients and others over to S.G., who deposited them into her personal account, and used the funds to pay respondent's bills.
In March 2013, at the suggestion of their mutual accountant, S.G., who was aware of respondent's tax situation, opened a bank account in her own name for respondent's benefit; the account was opened 11 days after respondent received a Final Notice of Intent to Levy from the IRS. Client payments and other checks to respondent were deposited into the account and were immediately followed by large withdrawals which kept the balance low. The banking arrangement between respondent and S.G. continued until 2014 when respondent was able to resume banking on her own. S.G. charged respondent $100 per day to handle her banking matters (the same rate at which she was compensated for her paralegal services) and of the $50,000 she loaned respondent she is still owed $15,000.
Respondent expressed remorse but it was confined to her failure to maintain separate accounts for client/third-party funds and her personal/business funds.
The Referee found that respondent's bank statements and her admissions clearly demonstrated that for most of her 25-year legal career she improperly used her escrow accounts as a dual depository for client/third-party funds and her business/personal funds in violation of rule 1.15(b)(1) and accordingly sustained charge one.
Charge two alleged that respondent failed to keep required bookkeeping records for her escrow accounts in violation of rule 1.15(d)(1)(i),(ii), and (viii). The Referee did not sustain charge two even though respondent failed to produce the computerized ledger she claimed to have maintained.
Notably, while the bank statements for respondent's escrow accounts specify the amounts on deposit for each client and the dates of each deposit and withdrawal, they do not specify the source of each deposit, nor the purpose of each deposit and withdrawal, which respondent is obligated to keep record of pursuant to rule 1.15(d)(1). Thus, contrary to the Referee, the Hearing Panel recommended sustaining this charge.
Charges three and four alleged that "[b]y depositing her personal funds into her escrow account(s) . . . and then removing all and/or portions of such funds as cash in order to shield such funds from ... tax authorities ..." respondent violated rules 8.4(c) and 8.4(d). The Referee did not sustain these charges, nor did the Panel.
Charges five and six alleged that respondent used the S.G. accounts as a depository for her personal funds out of which her personal expenses were paid as a means of shielding her personal funds from tax authorities in violation of rules 8.4(c) and 8.4(d). Neither the Referee nor the Panel sustained these charges, finding that the S.G. accounts were not used to conceal funds but to get respondent through a difficult time with respect to her physical and emotional recovery and to ensure that her bills and expenses were timely paid.
Charge seven alleged that by engaging in all of the alleged conduct she violated rule 8.4(h). The Referee sustained this charge only insofar as it pertained to the misconduct alleged in charge one, the only other charge he sustained.
The Referee rejected respondent's suggestion of a public censure in light of her failure to comply with rule 1.15(b)(1) and its predecessor former Code of Professional Responsibility DR 9-102(b)(1) (22 NYCRR 1200.46[b][1] for approximately 22 years. The mandated use of separate accounts with respect to client funds is fundamental to the practice of law, as evinced in the biennial registration statements in which attorneys attest to compliance with this requirement, and a public censure would "not put the profession on notice that ignorance of the basic escrow rules is not an excuse that will be tolerated for twenty-five years, even assuming there was a good faith' basis when the violation first occurred." The Referee did not cite to any case law in support of a four-month suspension.
The Hearing Panel affirmed the Referee's liability findings except it also recommended sustaining charge two, finding that respondent's bank statements alone did not comply with rule 1.15(d)(1), and sustaining charge seven (engaging in conduct that adversely reflects on fitness as a lawyer) to cover both charges one and two.
As to charges three-six, the Hearing Panel agreed with the Referee's reasoning for not sustaining them.
Although the Panel recommended sustaining one more charge than the Referee, it suggested modifying the Referee's sanction recommendation from a four-month suspension to a two-month suspension. As with the Referee, the Hearing Panel failed to cite any case law to support its recommendation of a two-month suspension.
The AGC now asks this Court to affirm the Hearing Panel's liability findings as to charges one, two and seven (in part), disaffirm the Panel's findings dismissing charges three-six and seven in part, and disaffirm the Panel's sanction recommendation of a two-month suspension, and instead suspend respondent for two years. Alternatively, the AGC seeks an order affirming the Referee's findings as to charge one and seven (in part), disaffirming his findings dismissing charges two-seven (in part), and upon doing so, sustaining these charges, and disaffirming his sanction recommendation and suspending respondent for two years.
The AGC argues, inter alia, that the Referee and Hearing Panel misapplied this Court's precedent in not sustaining charges three and four in that respondent's long-standing misuse of her escrow accounts as a depository for business/personal funds, in conjunction with her cash hoarding, is sufficient in and of itself to find violations of rules 8.4(c) and 8.4(d). The AGC contends that the Referee and Hearing Panel took an overly mechanical view in finding that the fact that respondent did not close any business/personal accounts in favor of her escrow accounts prior to the IRS's 2009 garnishment of her Social Security payments belied a finding of scienter. The AGC cites to, inter alia, Matter of Silva (28 AD3d 11 [1st Dept 2006]) in which this Court suspended the attorney for two years for misusing his escrow account to shield his personal funds from the IRS and a judgment creditor. The AGC argues that this Court rejected Silva's contention that the fact he opened his escrow account prior to its misuse as a depository for his personal funds belied a finding that he acted with fraudulent intent.
In addition, the AGC argues that respondent did not properly report her assets to the IRS because the 433-A and 433-B forms she submitted did not disclose, among other things, the S.G. accounts; the Referee and Hearing Panel incorrectly concluded that the IRS could have levied against respondent's escrow accounts if it had chosen to do so because respondent kept minimal funds therein; the Referee and Hearing Panel minimized respondent's cash hoarding because under 26 USC § 6321 the IRS had an automatic tax lien on all of respondent's personal assets; based on federal case law respondent's hoarding of cash to avoid an IRS levy was arguably criminal; respondent could have used legal channels to challenge the IRS's collection efforts rather than hoard cash; and not all of respondent's cash expenditures were directly related to her living expenses in that she made (modest) political and charitable donations and gifts to friends.
As to sanction, the AGC argues that this Court's case law, in conjunction with respondent's lack of mitigation, makes clear that a two-year suspension is warranted.
Respondent does not challenge the Referee's and Hearing Panel's liability findings but asks this Court to disaffirm their respective sanction recommendations, and instead, impose a public censure. Respondent asserts that the cases cited by the AGC in support of a two-year suspension are distinguishable in that they all involved attorneys who moved their [*4]business/personal funds from another location to their escrow accounts to avoid being levied against, whereas here, there was no such shifting by respondent who continuously used her escrow account, albeit under the mistaken belief that it could double as an operating account.
We find that the record supports sustaining charges one, two, three and charge seven (as it relates to those charges). Respondent admitted that from 1989 until 2011, she improperly used her escrow account as a dual depository for client/third-party funds and her business/personal funds in clear violation of rule 1.15(b)(1). In addition, the record fully supports the Hearing Panel's finding that respondent failed to maintain required bookkeeping records for the two escrow accounts at issue. Thus, there is ample basis to sustain charges one and two, neither of which are contested by respondent.
We also find a basis to sustain charge three. Both the Referee and Hearing Panel cited to the fact that, unlike in the cases of Matter of Brodsky (153 AD3d 52 [1st Dept 2017]), Matter of Brown (133 AD3d 7 [1st Dept 2015]), and Matter of Pritikin (105 AD3d 8 [1st Dept 2013]), respondent did not close any non-escrow accounts in favor of her escrow accounts after the IRS levied against her Social Security payments in 2009. Rather, she continuously, albeit improperly, used her escrow account as a dual depository for client/third-party funds and business/ personal funds from 1989 until 2011. While, based on the above case law, this is one factor to be considered, it is not necessarily dispositive, and overlooks the import of the admissions made by respondent during the Referee hearing, that after 2009, she continued to deposit business/personal funds into her escrow account which she promptly removed, and then hoarded the cash because she feared that the IRS would levy against her escrow account, thus leaving her without funds to live on.
In failing to recognize the significance of this admission, the Referee's and Hearing Panel's respective decisions to dismiss charge three are against the weight of the evidence (see Matter of Dalnoky, 90 AD3d 1, 5 [1st Dept 2011][attorney's remorse was belied by his persistence in justifying his deliberate misuse of escrow account by, inter alia, shielding funds from tax authorities]; Matter of Silva, 28 AD3d at 13 [purely circumstantial evidence permitted inference that the attorney intended to defraud creditors by his misuse of escrow account]; Matter of Goldstein, 10 AD3d 174, 176 [1st Dept 2004] [attorney's testimony that his misuse of escrow account as a depository for business/personal funds was to save small monthly fees associated with a business account and at the suggestion of bank officers, rather than to shield funds from tax authorities, was not credible and, in any event, attorney was responsible for his accounts]).
As to charge four which alleged that in using her escrow accounts to shield business/personal funds from the IRS respondent also violated rule 8.4(d)(conduct prejudicial to the administration of justice), the Hearing Panel was correct to dismiss this charge because rule 8.4(d) is more appropriately applied to misconduct which occurs within the context of litigation.
Both the Referee and Hearing Panel were correct in not sustaining charges five and six which pertain to respondent's alleged misuse of the S.G. accounts because: (1) they were not escrow accounts; (2) there is no evidence that the funds withdrawn from these accounts were actually subject to a lien or levied against; (3) the case law relied upon by the AGC involves only escrow accounts, not third-party personal accounts, and it has not presented any case law in which it was found that the manner in which the S.G. accounts were used constituted professional misconduct; and (4) the Referee and Hearing Panel both credited respondent's and S.G.'s testimony that the primary intent of the accounts was to enable respondent to survive, not to defraud the IRS.
Based on our finding sustaining charges one, two, three and charge seven (as it pertains to charges one, two and three), respondent is suspended from the practice of law in the State of New York for a period of two years, and until further order of this Court (see Matter of Brodsky, 153 AD3d at 56; Matter of Brown, 133 AD3d at 10-11).
All concur.
Order filed. [February 6, 2018]
Sweeny, J.P., Renwick, Andrias, Kapnick, Gesmer, JJ.
Respondent is suspended from the practice of law in the State of New York for a period of two years, and until further order of this Court.